IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KIMIKO SUZUE, as Independent
Administrator for the ESTATE OF
GINZABARO SUZUE, deceased,

       Plaintiff,

   v.

ANTHONY BAUMGART and JOHN
BAUMGART,

       Defendants.

No. 19-cv-2156
Judge Franklin U. Valderrama

**MEMORANDUM OPINION AND ORDER**

Ginzaburo Suzue (Ginzaburo) tragically died after being struck by a car while riding his bike. Kimiko Suzue (Kimiko), Ginzaburo's daughter and the independent administrator of the Estate of Ginzaburo, filed this wrongful death and survival action against Anthony Baumgart (Anthony), the driver of the car, and John Baumgart (John), the owner of the car and Anthony's father. R. 73, SAC.[1] Kimiko asserts claims of agency, negligent entrustment, and negligence related to the maintenance of the Chevy S10 Pickup (pickup). *Id.* John moves for summary judgment as to Counts III, IV, V, VI, VII, and VIII of the Second Amended Complaint. *See* R. 85, Mot. Summ. J. I (addressing Counts III, IV, V, and VI, the agency and negligent entrustment claims); R. 98, Mot. Summ. J. II (addressing Counts VII and VIII, the maintenance-related negligence claims). For the reasons set forth below,

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

John's motions for summary judgment as to Counts III, IV, V, VI, VII, and VIII of the Second Amended Complaint (R. 85, 98) are granted.

## Background

### I. Rule 56 Compliance

At the outset, Kimiko and John both advance arguments concerning each other's alleged non-compliance with Local Rule 56.1. *See* R. 57, Pl.'s Resp. I at 1–2 (noting that John's memorandum of law in support of Mot. Summ. J. I does not include a facts section and does not include citations to the record or to John's statement of facts); R. 87, Def.'s Reply I at 2–3 (noting that Kimiko's Rule 56.1(b)(3)(C) Statement was not signed by an attorney of record—an issue that was later corrected, *see* R. 72, Sec. Am. PSOF I at 4—and arguing that certain facts should be stricken as immaterial); R. 108, Pl.'s Resp. II at 2 (noting again that John's memorandum of law in support of Mot. Summ. J. II does not include a facts section and does not include citations to the record or to John's statement of facts); R. 114, Def.'s Reply II at 3 (noting that Kimiko's Response to John's Statement of Facts "disputes" facts without citing to any evidence in support of a genuine dispute). Rather than declining to consider merits arguments on procedural grounds, the Court exercises its discretion to substantively address all arguments raised in the parties' briefs. *See Feliberty v. Kemper Corp.*, 98 F.3d 274, 278 (7th Cir. 1996) (upholding the district court's decision to view procedural deficiencies as not "dispositive" in choosing to dispose of the underlying claims on the merits); *see also Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008) (district courts

have "broad discretion" to require compliance—or not—with Local Rule 56.1). To be sure, the Court will only consider evidence that is admissible, relevant, and material to deciding the instant motions.

## II. Facts

Turning to the factual record, the following facts are set forth as favorably to Kimiko, the non-movant, as the record and Local Rule 56.1 permit. *Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). This facts section details all material undisputed facts and notes where facts are disputed. At summary judgment, the Court assumes the truth of the undisputed facts, but does not vouch for them. *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

On the evening of January 8, 2018, 19-year-old Anthony drove his father's car to the Mundelein, Illinois community recreation center to exercise. R. 58-4, Anthony Dep. at 14:5–10; R. 56, Pl.'s Resp. DSOF I ¶¶ 8, 12–13.[2] After working out, Anthony left the recreation center and headed home. *Id.* ¶ 9. Anthony turned left out of the recreation center parking lot onto Midlothian Road, which had a speed limit of 35

---

[2]Citations to the parties' Local Rule 56.1 Statements of Fact will be identified as follows: "R. 52, DSOF I" for John's statement of facts related to John's motion for summary judgment I; "R. 56, Pl.'s Resp. DSOF I" for Kimiko's response to John's statement of facts related to John's motion for summary judgment I; "R. 58, PSOF I" for Kimiko's statement of facts related to John's motion for summary judgment I; "R. 69, Def.'s Resp. PSOF I" for John's response to Kimiko's statement of facts related to John's motion for summary judgment I; "R. 72, Sec. Am. PSOF I" for Kimiko's second amended statement of facts related to John's motion for summary judgment I (amended only to include counsel's signature); "R. 100, DSOF II" for John's statement of facts related to John's motion for summary judgment II; "R. 113, Pl.'s Resp. DSOF II" for Kimiko's response to John's statement of facts related to John's motion for summary judgment II; "R. 109, PSOF II" for Kimiko's statement of facts related to John's motion for summary judgment II; "R. 115, Def.'s Resp. PSOF II" for John's response to Kimiko's statement of facts related to John's motion for summary judgment II.

miles per hour. *Id*. While driving southbound on Midlothian Road, Anthony collided with Ginzaburo,[3] who was riding his bike. *Id*. ¶¶ 2, 9. At the time of the collision, Anthony had his headlights on but did not have his high beams (or brights) on. Pl.'s Resp. DSOF II ¶¶ 22–23. Ginzaburo died as a result of the injuries he sustained in the collision. Def.'s Resp. PSOF I ¶ 20.

Fundamental to the claims involving John, Anthony was driving his father's pickup when he collided with Ginzaburo. Pl.'s Resp. DSOF I ¶¶ 12–13. John originally purchased the pickup, and the title was in John's name only. *Id*. Anthony was the primary user of the pickup and drove the car nearly every day. *Id*. ¶ 14. John gave Anthony "permission" to drive the pickup whenever the car was at home, but it was "an overarching permission" and Anthony did not have to ask for specific permission every time he wished to use the car. *See* Anthony Dep. at 134:19–24. It is undisputed that on the night of the accident, Anthony was not "employed" by John. Pl.'s Resp. DSOF I ¶ 16. It is also undisputed that Anthony was heading straight home after he finished working out. *Id*. ¶¶ 17–18. He was not going to run any errands post-work-out nor bring anything home for his family. *Id*. In other words, Anthony was not using the pickup for any reason associated with John and instead was using the pickup for his own pleasure and purposes, specifically to go work out. *Id*. ¶¶ 19–20.

---

[3]The parties dispute how fast Anthony was driving at the time he collided with Ginzaburo. R. 69, Def.'s Resp. PSOF I ¶ 5. The Mundelein Police Department's Traffic Reconstruction Report estimated Anthony's speed of travel was between 39 and 43 miles per hour; whereas both Anthony and a witness to the collision, Tamara O'Brien (O'Brien), estimated that Anthony's speed of travel was between 35 and 40 miles per hour. *Id*. Anthony's actual speed of travel at the time of the collision is not material to the issues raised in the instant motions and will likely be the subject of expert discovery. *See* R. 68, Mot. Summ. J. I Reply at 3.

Anthony had been issued three traffic citations prior to the accident. Pl.'s Resp. DSOF I ¶ 21. Within the first year of obtaining his driver's license, Anthony was issued a speeding ticket in Fontana, Wisconsin for driving 35 miles per hour in a 25 mile-per-hour zone. *Id.* ¶ 22. Anthony did not dispute the citation and paid the fine. *Id.* He was also issued a ticket for turning left where no left turns were permitted; again, he did not dispute the ticket and paid the fine. *Id.* ¶ 23. Anthony was issued a third citation for driving outside of curfew hours. *Id.* ¶ 24. After receiving three citations within a certain period of time, Anthony's license was temporarily suspended. *Id.* ¶ 25. Anthony disputed the curfew violation ticket in court; the curfew ticket was dismissed, and his license was reinstated. *Id.* ¶ 26.

John was aware of all three traffic citations and was aware that Anthony's license had been temporarily suspended. Pl.'s Resp. DSOF I ¶ 28. Before the accident, John had ridden as a passenger in the pickup while Anthony drove. *Id.* ¶ 30. During his deposition testimony, Anthony was asked, "[i]s it fair to say that when you would [drive] with your father, from time to time, you might exceed the speed limit?" Anthony Dep. at 29:24–30:10. Anthony testified, "Yes." *Id.* Anthony was further asked, "And he would be aware of that, because he was a passenger in the vehicle; is that fair?" *Id.* at 30:11–13. Anthony testified, "I have no idea if he was aware of that." *Id.* John asserts that he was not aware that Anthony was speeding on any of those occasions. Pl.'s Resp. DSOF I ¶ 30.

At the time the pickup was purchased, there were no issues that required repair or maintenance. R. 113, Pl.'s Resp. DSOF II ¶ 13. However, approximately the

day after the pickup was purchased, one of the tires blew out. *Id.* ¶ 14. All four tires were replaced at Wal-Mart. *Id.* Several days after purchasing the pickup, on July 20, 2016, John scheduled a maintenance appointment at Mundelein Auto for the pickup. *Id.* ¶ 15. The parties dispute the scope of the July 20, 2016 maintenance appointment. *Id.* Kimiko contends (without pointing to any evidence in the record) that the appointment was limited only to checking the brakes and changing the oil. *Id.* John stated in an affidavit that he took the pickup to Mundelein Auto and requested that they "look at the vehicle, brakes, oil, and to perform all the work necessary to make sure the car was safe and able to be operated." R. 100-6, John Decl. ¶ 6. The Mundelein Auto invoice, dated July 20, 2016, lists the following services and parts purchases: lubricate chassis, change oil and filter, performance test ("needs compressor"), wiper blades, serpentine belt, front stabilizer links, clean and adjust rear brakes, front wheel alignment, and fuel filter. *Id.* at 4.

After the initial maintenance appointment, John and Anthony took the pickup to Mundelein Auto for regular maintenance every 3–5 months. Pl.'s Resp. DSOF II ¶ 17. The pickup was serviced five times between July 20, 2016 and November 22, 2017, a period of approximately 16 months. *Id.* ¶¶ 18–19. Before the accident on January 8, 2018, the pickup was last serviced on November 22, 2017. *Id.* ¶ 19. As noted above, at the time of the collision, Anthony had his headlights on but did not have his high beams (or brights) on. *Id.* ¶¶ 22–23. John testified that the pickup's lights were working at the time of the accident. R. 100-5, John Dep. at 29:5-6. Kimiko does not dispute the fact that the headlights were "working" at the time of the

6

accident. *See* Pl.'s Resp. DSOF II ¶ 20 ("On the date of the accident, there was nothing wrong with the windows of the Pickup or the mirrors of the Pickup, and the lights were working. (Ex. E, p. 29). RESPONSE: Undisputed as to the operation of the lights."). Following the collision, Anthony told the responding Mundelein Police Department Officer, "I didn't see him," and "I don't have the brightest headlights." *Id.* ¶ 24; R. 115, Def.'s Resp PSOF II ¶ 4. However, neither the post-occurrence inspection of the pickup nor the Traffic Crash Reconstruction Report performed by Mundelein Police indicate that the headlights were not working properly, malfunctioned, or were otherwise defective. Pl.'s Resp. DSOF II ¶¶ 25–29. The Traffic Crash Reconstruction Report also does not mention the pickup's headlights as a cause or contributing factor to the accident. *Id.* ¶ 29.

Finally, and relevant only to the issue of spoliation and adverse inference, on January 9, 2019, Plaintiff's counsel sent John a preservation of evidence request as to Anthony's cell phone. *See* R. 144, Protocol Order at 2. The Court subsequently issued a protective order that prevented John and Anthony from destroying Anthony's cell phone and allowed for an inspection of the cell phone. R. 12, 13. Despite the preservation order, Plaintiff's data extraction expert discovered, upon inspection, that the phone had been tampered with and destroyed. R. 132-3, Binder Dep. at 81:17–18 ("When I touched the phone, parts of the screen started falling off."). After another fruitless extraction, Kimiko filed a motion for sanctions, which the Court[4] granted in part and denied in part. R. 82, Sanctions Order. In that Order, the Court

---

[4]At that time, this case was pending before Judge Kocoras. It was reassigned to this Court on September 28, 2020. *See* R. 126.

granted Kimiko permission to access Anthony's Samsung Cloud account credentials. *Id.* Kimiko's expert then conducted a Cloud Extraction and discovered that there were 27 artifacts showing the existence of text messages and calls that occurred between 6:00 p.m. and 8:00 p.m. on the night of the accident, four of which were sent between 7:07 p.m. and 7:09 p.m., which was shortly before a witness to the accident called 911 at approximately 7:10 p.m. R. 132-2, Binder Report at 7–9. John represents that those "deleted" text messages have been subsequently produced to Kimiko. Def.'s Reply I at 8–9.

### III.    Procedural History

Additionally, in an effort to make sense of a rather confusing docket, the Court briefly reviews this case's procedural history as it relates to summary judgment.

On September 17, 2019, John filed a motion for summary judgment as to Kimiko's original complaint. R. 38. Following Kimiko's filing of an amended complaint, the Court terminated John's first motion for summary judgment as moot and permitted him to file an amended motion. R. 45. On November 14, 2019, John filed an amended motion for summary judgment, a memorandum of law in support, and a Rule 56 statement of facts as to Kimiko's amended complaint. R. 49–52. The November 2019 motion for summary was fully briefed with all Local Rule 56.1 statements of facts submitted. R. 56–58, 68, 71–72.

Then, on January 2, 2020, Kimiko filed a second amended complaint. R. 73. On January 23, 2020, in response and with leave of Court, John filed a renewed motion for summary judgment, which challenges Counts III, IV, V, and VI and which the

Court labels "Mot. Summ J. I" for purposes of this Opinion. R. 85. In support of and in opposition to Mot. Summ. J. I (R. 85), both parties now rely on the briefs and Rule 56 statements of fact that were filed in relation to John's November 2019 summary judgment motion (*see* R. 50–52, 56–58, 71–72), which has been terminated as moot (*see* R. 49, 143). John additionally filed an amended reply brief (R. 87), which appears to replace the November 2019 motion for summary judgment reply brief (R. 68). In sum, the Court considers the briefs and Rule 56 statements that were filed in relation to John's November 2019 summary judgment (*see* R. 50–52, 56–58, 71–72) plus John's amended reply brief (R. 87) in resolving the instant Mot. Summ. J. I (R. 85).

On June 17, 2020, John filed an entirely new motion for summary judgment, which challenges Counts VII and VIII and which the Court labels "Mot. Summ. J. II" for purposes of this Opinion. R. 98. The parties filed new briefs and new Rule 56 statements of fact to address Mot. Summ. J. II. *See* R. 99–100, 108, 109, 113, 115.

This Opinion resolves both Mot. Summ. J. I as to Counts III, IV, V, and VI and Mot. Summ. J. II as to Counts VII and VIII.

## Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v.*

*Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

## Analysis

John seeks summary judgment as to Counts III, IV, V, VI, VII, and VIII of the Second Amended Complaint. In Counts III and IV, Kimiko alleges that Anthony was acting as John's agent at the time of the collision, and as such, John should be liable for Anthony's negligence pursuant the Illinois Survival Act (Count III) and the Illinois Wrongful Death Act (Count IV) under an agency theory.[5] John argues that he is entitled to summary judgment as to these agency claims because there is no evidence

---

[5]The Illinois Wrongful Death Act states, "[w]henever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof." 740 ILCS 180/1. The Illinois Survival Act provides for a derivative action allowing "a representative of the decedent to maintain those statutory or common law actions which had already accrued to the decedent before he died." *Kmak v. Sorin Grp. Deutschland GmbH*, 2017 WL 8199974, at *3 (N.D. Ill. Dec. 12, 2017); *see also* 735 ILCS 5/27-6.

that Anthony was acting as John's agent, servant, or employee at the time of the accident. In Counts V and VI, Kimiko claims that John negligently entrusted his pickup to Anthony and accordingly should be held liable for the injuries, medical expenses, pain and suffering, and other damages resulting from Anthony's collision under the Illinois Survival Act (Count V) and the Illinois Wrongful Death Act (Count VI). John contends that he is entitled to summary judgment on the negligent entrustment claims because there is no evidence that could establish John knew or should have known that Anthony was an incompetent or reckless driver. Finally, in Counts VII and VIII, Kimiko alleges that John was negligent in his maintenance of the pickup and should be held liable for the injuries, medical expenses, pain and suffering, and other damages resulting from the collision again under the Illinois Survival Act (Count VII) and the Illinois Wrongful Death Act (Count VIII). John argues that he is also entitled to summary judgment on the negligent maintenance claims because the record is devoid of evidence that John negligently maintained the pickup by failing to maintain or repair the headlights. The Court addresses each argument in turn.

## I.    Agency Counts (Counts III and IV)

In Counts III and IV, Kimiko alleges that Anthony was acting as John's agent at the time of the collision, and as such, John should be liable for his son's negligence. Under Illinois law, "parents may be held liable under an agency theory for their child's negligent driving if, at the time of the incident, the child was engaged in doing the parents' business" or running a family errand. *Stellmach v. Olson*, 614 N.E.2d

129, 132 (Ill. App. Ct. 1993) (collecting cases). John argues that there is no genuine dispute of material fact as to whether Anthony was acting as John's agent at the time of the accident. *See* R. 50, Mot. Summ. J. I Memo. at 4. The Court agrees.

The parties do not dispute that Anthony used John's pickup to drive to a workout facility and that Anthony was exercising for personal reasons and not at John's request or direction. Pl.'s Resp. DSOF I ¶¶ 8–9, 20. It is also undisputed that Anthony was heading straight home after he finished working out. *Id.* ¶¶ 17–18. It is uncontested that Anthony was not going to run any errands post-work-out nor bring anything home for his family. *Id.* All in all, it is undisputed that Anthony was not using the pickup for any reason associated with John and instead was using the pickup for his own pleasure and purposes, specifically exercise. *Id.* ¶¶ 19–20. This evidence is dispositive as to Kimiko's agency claim because "a parent is not liable under *respondeat superior* for damages caused by a child who drove the parent's car for the child's own purposes, even if the parent consented to that use." *Stellmach*, 614 N.E.2d at 133. The Court is mindful that Illinois law generally provides that "[w]hat constitutes a family errand is a question of fact," *id.* at 132, but even so, the record provides no reasonable basis to conclude that Kimiko could prevail on an agency claim.

Importantly, Kimiko does not directly challenge the record evidence and instead argues that the destruction of Anthony's cell phone provides cause for the Court to find spoliation and issue an adverse inference instruction against Anthony and John. Pl.'s Resp. I at 11–15. Kimiko submits that by destroying Anthony's cell

phone, Anthony and John, acting in bad faith, prevented her from proving up her agency claim. *Id.* at 11. Kimiko submits further that Anthony's cell phone could have revealed a text message, such as, "on the way to the store to pick up my dad's dry cleaning," and that text message could have successfully sustained an agency claim against John. *Id.* Accordingly, Kimiko argues that she is entitled to an adverse inference on the issue of agency. *Id.*

Crucially, in his amended reply, which was filed after the Court granted in part and denied in part Kimiko's amended motion for sanctions, John represents that the "deleted" text messages have since been recovered and subsequently produced to Kimiko. Def.'s Reply I at 8–9 ("The text messages at issue have been retrieved and produced . . . ."); *see also* Binder Report at 7–9 (performing a Cloud Extraction, which revealed that four text messages were sent back and forth between Anthony and his girlfriend, Allyson, between 7:07 p.m. and 7:09 p.m., which was shortly before a witness to the accident called 911 at approximately 7:10 p.m.). Kimiko does not challenge this proposition.[6] With the text messages now produced, John contends that the claims for spoliation and Kimiko's request for an adverse inference are now moot. Def.'s Reply I at 8–9.

The Court agrees with John. With the missing evidence no longer missing, the adverse inference remedy is no longer available to Kimiko. *See Desai v. Charter Commc'ns*, 2016 WL 11658795, at *6 (W.D. Ky. July 12, 2016) (noting that if the

---

[6]Kimiko has not sought leave to file any sur-response to John's contention that the deleted text messages have now been produced, nor did she address the issue in her response to Mot. Summ. J. II (R. 108), which was filed after John's amended reply to Mot. Summ. J. I (R. 87).

plaintiff is indeed successful in her attempts to recover the deleted Facebook messages, "the entire spoliation issue will be rendered moot"). In making this finding of mootness, the Court need not determine whether Anthony and/or John acted in bad faith in the initial deletion or destruction of the text messages. Indeed, the Court understands that whether there was an intentional deletion of text messages is the subject of ongoing expert discovery. *See* R. 151, Mot. Cell Phone Expert at 3.

A potential adverse inference was Kimiko's sole basis for raising a question of fact. Without it, Kimiko has failed to raise a genuine issue of material fact as to her agency claims. Kimiko has presented no evidence from which any reasonable person could infer that Anthony was acting as John's agent at the time of the collision. In fact, the record demonstrates the opposite: it establishes that Anthony was at the gym for personal reasons and was not driving at John's request or direction. Pl.'s Resp. DSOF I ¶¶ 8–9, 17–20. As such, Kimiko cannot establish liability on an agency theory. John's motion for summary judgment as to Counts III and IV is granted.

## II.    Negligent Entrustment (Counts V and VI)

In Counts V and VI, Kimiko claims that John negligently entrusted his pickup to Anthony and should accordingly be held liable for the injuries, medical expenses, pain and suffering, and other damages resulting from Anthony's collision. In Illinois, an action for negligent entrustment consists of "entrusting a dangerous article to another whom the lender knows, or should know, is likely to use it in a manner involving an unreasonable risk of harm to others." *D'Amico v. D'Amico*, 2018 WL 1532798, at *2 (S.D. Ill. Mar. 29, 2018) (quoting *Zedella v. Gibson*, 650 N.E.2d 1000,

1002 (Ill. 1995)). The negligent act of giving an automobile to an incompetent driver forms the basis of the tort. *Pelczynski v. J.W. Peters & Sons, Inc.*, 533 N.E.2d 1137, 1140 (Ill. App. Ct. 1989). "[A] person may be liable for the negligent entrustment of a vehicle where that person entrusts the vehicle to one whose incompetency, inexperience, or recklessness is known or should have been known by the entrustor of the vehicle." *Watson v. Enter. Leasing Co.*, 757 N.E.2d 604, 610 (Ill. App. Ct. 2001) (internal citations omitted). In the context of vehicular accident cases in Illinois, "the elements of a cause of action for negligent entrustment are: (1) entrustment of an automobile by its owner to a known incompetent; and (2) a showing that the entrustee's incompetence was the proximate cause of the injury." *Smith v. United States*, 688 F.2d 476, 480 (7th Cir. 1982).

The parties' briefs largely focus on the first element of the negligent entrustment claim—the defendant entrusted an automobile to a known incompetent and/or reckless driver. John asserts that there is no evidence in the record that shows Anthony was an incompetent or reckless driver and no evidence in the record that shows John knew or should have known that Anthony was an incompetent or reckless driver. Mot. Summ J. I Memo. at 9–11; Def.'s Reply I at 5. John argues that he is accordingly entitled to summary judgment on the negligent entrustment claims. *Id.*

The Court first looks to the evidence related to the known incompetent or reckless element. John contends that the only evidence that could even suggest a known incompetence or recklessness is Anthony's driving record. Mot. Summ J. I Memo. at 9–11. The factual record clearly establishes that John was aware that

Anthony had been issued three traffic citations. Pl.'s Resp. DSOF I ¶ 28. Within the first year of obtaining his license, Anthony was issued a speeding ticket for driving 35 miles per hour in a 25 mile-per-hour zone; that same year, he was issued a ticket for turning left where no left turns were permitted; and, he was issued a third citation (which was ultimately dismissed) for driving outside of curfew hours. *Id.* ¶¶ 22–24. After receiving these three citations within a certain period of time, Anthony's license was temporarily suspended. *Id.* ¶¶ 25–26.

Kimiko insists instead that *two* pieces of evidence provide a basis for John's knowledge of Anthony's incompetence or recklessness: (i) the fact that John was aware of Anthony's driving record, which included three infractions that resulted in a temporary suspension of his license, *and* (ii) the fact that John "acquiesced" to riding in the pickup while Anthony drove in excess of the speed limit. Kimiko argues that this is sufficient evidence to present the question of negligent entrustment to the jury. Pl.'s Resp. I at 2.

In his reply brief, John argues that Kimiko's characterization of John's "acquiescence" to Anthony's speeding misstates the evidence. Def.'s Reply I at 4. The Court agrees. Anthony did testify that on the occasions when he drove with his father in the car, "it is fair to say" that he "might" have exceeded the speed limit. Anthony Dep. at 29:24–30:10. But importantly, Anthony further testified that he could not speak to whether his father was aware that he was speeding on those occasions or whether he might periodically drive over the speed limit (*id.* at 30:11–13), and John asserts that he was not aware that Anthony was speeding, Pl.'s Resp. DSOF I ¶¶ 30–

31. The Court finds that Anthony's testimony does not create a question of fact that John knew about, personally witnessed, or acquiesced to Anthony's speeding—the fact that John may have ridden in the car while Anthony sped does not create a question of fact as to John's *knowledge*. The evidence shows that John did not know about Anthony's occasional speeding. See Pl.'s Resp. DSOF I ¶¶ 30–31. As such, the Court agrees with John that the only evidence that could support the negligent entrustment claims is John's knowledge of Anthony's driving record.

So, the Court analyzes the parties' cited cases through the lens of Anthony's driving record. Citing *Eyrich v. Estate of Waldemar*, 765 N.E.2d 504 (Ill. App. Ct. 2002) and *McGath v. Price*, 793 N.E.2d 801 (Ill. App. Ct. 2003), John argues that even knowledge of infractions in a driving record (that importantly did not result in vehicular accidents) cannot, by themselves, support a finding of negligent entrustment as a matter of law. Mot. Summ J. I Memo. at 9.

In *Eyrich*, the plaintiff was a passenger on a motorcycle and was severely injured when the motorcycle driver attempted to pass a row of cars and collided with another car. 765 N.E.2d at 505. The plaintiff sued, among others, the retail seller of the motorcycle, arguing that the defendant-retailer had negligently entrusted a dangerous vehicle to a reckless motorist. *Id.* Affirming the trial court's grant of summary judgment in favor of the retailer, the court found that while the evidence indicated that the motorist had one speeding ticket, and the retailer may have been aware of that fact, the record was still void of any fact which should have placed the retailer on notice that the motorist was reckless, incompetent, or inexperienced. *Id.*

at 507. Importantly, the appellate court rejected plaintiff's characterization that the motorist's driving record was "poor" and should have alerted the retailer that the motorist would operate a motorcycle in a negligent manner. *Id.* The court noted that the motorist's driving record consisted of one speeding ticket, one ticket for having tinted windows, and no vehicular accidents. *Id.* The appellate court found that it could not be "reasonably concluded that a 20-year-old adult, with one prior speeding ticket, posed a risk of harm to others." *Id.* at 504, 507.

Attempting to distinguish *Eyrich*, Kimiko argues that the court affirmed summary judgment not because knowledge of a motorist's speeding ticket could never sustain a negligent entrustment claim but because there was evidence in the record of the *Eyrich* motorist's *competence* that "counteracted" the "damning facts." Pl.'s Resp. I at 9. The *Eyrich* defendant-retailer knew that the motorist was 20 years old (i.e., not a minor), had a valid driver's license, was gainfully employed, owned an automobile which was properly insured, and had previously owned and operated a motorcycle. *Eyrich*, 765 N.E.2d at 506–07. The record showed that the motorist presented himself to the defendant-retailer "as a competent adult and a responsible driver." *Id.* at 507. Kimiko insists that those facts counteracted the *Eyrich* motorist's driving record, and facts that would similarly show competence are not present here.

John contends that Kimiko misconstrues *Eyrich*'s holding and that *Eyrich* is on point. Def.'s Reply at 7. The Court agrees. Yes, *Eyrich* discusses facts that speak to the motorist's competence (valid driver's license, gainfully employed, car owner, insured, etc.), but the appellate court did not affirm summary judgment because, as

Kimiko suggests, the "good facts" outweighed the "bad facts." Rather, it is clear that the decision rests on the finding that "[t]he record is void of any fact which placed [the retailer] on notice that [the motorist] was reckless, incompetent or inexperienced." *Eyrich*, 765 N.E.2d at 507. Indeed, the *Eyrich* opinion concludes as follows: "Nothing in the record could support an inference that [the retailer] was on notice that [the motorist] would operate the motorcycle in a dangerous manner. Therefore, we find that the trial court was correct in granting [the retailer]'s motion for summary judgment." *Id*. The Court finds that the facts at play here warrant the same conclusion. John was aware that Anthony had infractions in his driving record, including one speeding ticket, but that none of those infractions resulted in a vehicular accident. Just as in *Eyrich*, the Court finds that it cannot be "reasonably concluded" that Anthony, a 19-year-old adult "with one prior speeding ticket, posed a risk of harm to others," and nothing in the record supports an inference that John was on notice that Anthony would operate the pickup in a dangerous manner. *Id*. at 504, 507.

*McGath*, John's second cited case, offers the same reasoning. In *McGath*, a 27-year-old woman was driving a car that her mother had rented from Enterprise when she collided with the plaintiff's vehicle, severely injuring the plaintiff and his family. 793 N.E.2d at 803. The plaintiff sued the driver's mother on the theory of negligent entrustment. *Id*. at 804. The evidence revealed that the daughter had received at least four motor vehicle citations in the past. *Id*. at 806. The Illinois Appellate Court affirmed the trial court's finding of summary judgment in favor of defendant,

explaining that there was no evidence that the mother was aware of any of her daughter's traffic violations or tickets, and that, as far as the mother knew, the daughter had a clean driving record and had never been stopped by police for any reason. *Id.* at 809. The appellate court found no evidence that the mother knew or should have known that her daughter would operate the vehicle in a negligent manner on the day in question. *Id.* at 810. Relevant here, the appellate court also went further in its analysis. *Id.* The court explained that *even if* a question of fact existed as to whether the mother knew about her daughter's past traffic citations or that her daughter's license had been suspended, "this would not by itself have been sufficient to show that [the mother] knew or should have known that [her daughter] was an incompetent or reckless driver, since the traffic violations . . . did not involve vehicular accidents and the suspension was not a result of the magnitude of these violations, but rather, only because she failed to timely appear in traffic court." *Id.*

Kimiko factually distinguishes *McGath*, arguing that the *McGath* mother had no knowledge of her daughter's driving record, whereas, John undisputedly had knowledge of Anthony's driving record. Pl.'s Resp. I at 8. The Court takes Kimiko's point and acknowledges that the applicable discussion in *McGath* was not necessary for the appellate court's resolution of the negligent entrustment issue in that case. Dicta, of course, is not binding, but dicta can be helpful and instructive. *See In re O'Malley*, 601 B.R. 629, 646 (Bankr. N.D. Ill. 2019), *aff'd,* 2021 WL 794980 (N.D. Ill. Mar. 2, 2021). The Court finds that the *McGath* dicta is persuasive and instructive to this analysis, especially when coupled with the holding in *Eyrich*. *Eyrich*, and to a

lesser extent *McGath*, stand for the proposition that in a negligent entrustment case where the entrustee has traffic citations in his/her driving record (and none of those citations involve vehicular accidents), knowledge of those citations, alone, do not support a finding of negligence.

Here, Kimiko has demonstrated that John knew about Anthony's driving record and knew that his license was briefly suspended. But, applying the reasoning in *Eyrich* and *McGath*, these facts, by themselves, are not sufficient to show that John knew or should have known that Anthony was an incompetent or reckless driver, because the traffic violations did not involve vehicular accidents, and the ultimately discharged suspension was not a result of the magnitude of these violations.

Kimiko relies on one case, *Gonzales v. City Wide Insulation, Inc.*, 1990 WL 77525, at *1 (N.D. Ill. May 29, 1990), to support a denial of summary judgment. Pl.'s Resp. I at 6–7. In *Gonzales*, the defendant's employee, while on a lunch break, consumed large quantities of alcohol and then, while driving the company vehicle, struck an automobile driven by the decedent. 1990 WL 77525, at *1. The decedent's estate filed suit against the employee and the employer. *Id*. In denying the employer's motion for summary judgment, the district court found that a question of fact existed whether the defendant-employer had adequately investigated the employee's background before hiring him. *Id*. at *3. The court noted that "there was not much in the way of evidence to suggest that [the employer] had *reason to know* that [employee] had difficulties with alcohol," because the employee had not been cited or convicted of any traffic violations, had been relatively abstinent during his employment, and

had never been charged with an offense related to alcohol or intoxication. *Id*. But, the court explained that in Illinois, employers have a duty to make reasonable investigation into a prospective employee's past to determine fitness for the job. *Id*. (citing *Easley v. Apollow Detective Agency, Inc.,* 387 N.E.2d 1241 (Ill. App. Ct. 1971)). And therefore, the court found that it could not be said that a jury could not find negligence in the employer's failure to inquire into the prospective employee's alcoholism. *Id*.

Kimiko explains that the court in *Gonzales* found that a jury could decide that the employer negligently entrusted its vehicle to the employee even when the employer did not have actual knowledge of employee's history of drinking. Pl.'s Resp. I at 6–7. Here, Kimiko argues that John *did* have actual knowledge of Anthony's driving record; in other words, the facts in the case at bar support a claim for negligent entrustment more strongly than the facts in *Gonzales*. *Id*. at 6.

In reply, John argues that *Gonzales* is factually distinguishable. Def.'s Reply I at 5–6. John notes that unlike the case here, *Gonzales* involved a combined claim against an employer for negligent entrustment and negligent hiring, and the alleged incompetence in *Gonzales*, driving while intoxicated, automatically triggered an inference of recklessness. *Id*. (citing *Cazares v. Frugoli*, 2014 WL 996508, at *3 (N.D. Ill. Mar. 11, 2014)). The Court agrees that *Gonzales* is too factually distinguishable to be instructive in the instant analysis. Anthony is not his father's employee or agent, so the duty to investigate does not apply. And, as John noted, speeding does

not automatically trigger an inference of recklessness. Kimiko has failed to cite an analogous case that would support a denial of summary judgment here.

All in all, the Court determines, like the courts in *Eyrich* and *McGath*, that no reasonable juror could find that because John was aware that his son drove 10 miles-per-hour over the speed limit on one occasion and made an improper left-hand turn on one other occasion (infractions that, importantly, did not result in vehicular accidents), John should have known that Anthony's driving would pose an unreasonable risk of harm to others. Such infractions, on their own, are not sufficient to demonstrate the requisite known incompetence or recklessness. As such, the Court determines that Kimiko fails to present evidence that could cause a reasonable factfinder to find for her on the first element of negligent entrustment,[7] and John's motion for summary judgment as to Counts V and VI is accordingly granted.

## III.    Negligent Maintenance (Counts VII and VIII)

Finally, in Counts VII and VIII, Kimiko alleges that John was negligent in his maintenance of the pickup, specifically as to the pickup's headlights, and should be held liable for the injuries, medical expenses, pain and suffering, and other damages resulting from Anthony's collision. "In order to prevail in an action for negligence, the plaintiff must prove that: (i) the defendant owed a duty to the plaintiff; (ii) the

---

[7]Reaching this determination requires a grant of summary judgment in favor of John, and the Court accordingly need not address the parties' positions regarding the second element of the negligent entrustment claim—proximate cause. *See D'Amico*, 2018 WL 1532798, at *3 (granting summary judgment in favor of the defendant because the plaintiff failed to proffer evidence that could support the first element of a negligent entrustment claim— incompetence or unfitness on the part of the entrustee that was or should have been known to the defendant); *see also McGath*, 793 N.E.2d at 808–810 (same); *Eyrich*, 765 N.E.2d at 507 (same).

defendant breached that duty; and (iii) the defendant's breach was the proximate cause of the plaintiff's injury." *McCoy v. Iberdrola Renewables, Inc.*, 2013 WL 4027045, at *3 (N.D. Ill. Aug. 7, 2013). Illinois law provides that vehicle owners must exercise ordinary care in the ownership, maintenance, and upkeep of their vehicles. *See* 625 ILCS 5/12-101(a). John argues that to defeat summary judgment, Kimiko must proffer evidence that creates a question of fact that John breached his duty to exercise ordinary care in his maintenance of the pickup (breach) and his failure to do so proximately caused the accident (causation). R. 99, Mot. Summ. J. II Memo. at 3. John contends that Kimiko has cannot establish the breach and causation elements based on the record, and he is accordingly entitled to summary judgment on the negligent maintenance claims.[8] The Court agrees.

Starting with breach, John maintains that Kimiko has not introduced evidence that could establish that John breached his to duty to exercise ordinary care in his maintenance and upkeep of the pickup. John cites *Waldow v. Illinois Cent. R.R. Co.*, 2019 WL 1584561, at *1 (N.D. Ill. Apr. 12, 2019) for this contention. In *Waldow*, the plaintiff-employee's work truck "conked out," and the plaintiff opened the hood to jump start the engine. 2019 WL 1584561, at *1. The hood support gave way, and the

---

[8]For the first time in his reply brief, John also appears to challenge the duty element, arguing that John had no statutory duty under 625 ILCS 5/12-101(a), because no statutory duty is created if a plaintiff has not introduced facts creating a genuine question concerning the defendant's *actual knowledge* of a defective condition. Def.'s Reply II at 7 (citing *McMaster v. Zwicker*, 551 N.E.2d 654, 655 (Ill. App. Ct. 1990) (emphasis added)). The Court does not consider this untimely argument in deciding summary judgment here. *Dyson, Inc. v. Sharkninja Operating LLC*, 2016 WL 4720019, at *1 (N.D. Ill. Sept. 9, 2016) ("Arguments raised for the first time in a reply brief are waived.") (citing *U.S. v. Kennedy*, 726 F.3d 968, 974 n.4 (7th Cir. 2013)).

hood fell on the plaintiff's arm, severely injuring him. *Id*. The plaintiff-employee sued his employer, asserting, among other things, that the employer created a dangerous condition by negligently failing to inspect or maintain its trucks. *Id*. at *3. The district court granted summary judgment in favor of the employer, finding that the plaintiff "failed to present a shred of evidence suggesting that [the employer] breached that duty." *Id*. The court found instead that the record showed that the employer ensured that there were daily pre-trip inspections and that all of the company's vehicles were subject to a maintenance schedule based on mileage and inspected at least annually by professional mechanics. *Id*.

As in *Waldow*, John argues that the record is void of any evidence from which a jury could infer that he failed to properly maintain the pickup. Mot. Summ. J. II Memo. at 3. Rather, John argues that the record establishes that he regularly took the vehicle for routine maintenance, including first at Wal-Mart and then at Mundelein Auto every 3–5 months between July 20, 2016 and November 22, 2017. Pl.'s Resp. DSOF II ¶¶ 14–19. John argues further that nothing in the record shows that there had been a concern or issue with the headlights during any of those routine maintenance appointments. *See generally* Pl.'s Resp. DSOF II; PSOF II.

Kimiko does not attempt to distinguish *Waldow*, and rather than pointing to any evidence that John failed to exercise ordinary care in the ownership, maintenance, and upkeep of the pickup, Kimiko contends that Anthony's post-accident statements—that his "headlights aren't the brightest" and that he "didn't even see" Ginzaburo—create a genuine issue of material fact as to whether John

breached his duty to exercise ordinary care in maintaining his pickup. *See* Pl.'s Resp. II at 3 (citing *T.M. Doyle Teaming Co. v. Freels*, 735 F. Supp. 777 (N.D. Ill. 1990) for the proposition that conflicting testimony can raise a genuine issue of material fact as to whether a defendant breached a duty of reasonable care). Kimiko maintains that those statements show that the deficient condition of the vehicle's headlights "was readily apparent," and John failed to inspect, replace, or repair the headlights to bring them into safe, working order. *Id*. at 7.

The Court disagrees. Anthony's post-incident statement that the "headlights weren't the brightest" *might* be true in hindsight, but that statement does not show that John created a dangerous condition by failing to exercise ordinary care or that John knew or should have known that the headlights were insufficient or in need of a replacement. And, Anthony's statement that the lights "weren't the brightest" also does not create a genuine issue of material fact as to whether the headlights were actually defective. What's more, Kimiko does not dispute that the lights were operating on the date of the accident. Pl.'s Resp. DSOF II ¶ 20. As in *Waldow*, the Court finds that there is simply no evidence from which a jury could infer that John failed to properly maintain his pickup.

The Court finds that Kimiko fails to point to any record evidence that could lead a reasonable juror to find that John breached his duty of care,[9] and as such,

---

[9]Reaching this determination requires a grant of summary judgment in favor of John, and the Court accordingly need not address the parties' positions regarding the third element of the negligence claim—proximate cause. *Pavlik v. Wal-Mart Stores, Inc.*, 753 N.E.2d 1007, 1010 (Ill. App. Ct. 2001) ("If the plaintiff cannot establish an element of her cause of action, summary judgment for the defendant is proper."); *see also Waldow*, 2019 WL

Court finds that summary judgment in favor of John on the negligent maintenance claim is warranted. *See, e.g., Yates v. Hannan,* 2007 WL 1174200, at *3 (E.D. Tenn. Apr. 19, 2007) (granting summary judgment for defendants on a negligent maintenance claim); *Sabourin v. LBC, Inc.,* 731 F. Supp. 1145, 1151 (D.R.I. 1990) (similar). The Court grants John's motion as to Counts VII and VIII.

## Conclusion

For the reasons given above, John's motions for summary judgment (R. 85, 98) as to Counts III, IV, V, VI, VII, and VIII of the Second Amended Complaint are granted. By this ruling, all claims against Defendant John Baumgart are dismissed. By July 22, 2021, Kimiko and Anthony shall file a joint status report stating (1) whether the parties would like a settlement conference with the Magistrate Judge, (2) whether the parties consent to proceeding with trial before the Magistrate Judge, and (3) whether the parties agree to a bench trial before the District Judge, and, if so, whether the parties agree to a virtual bench trial.

Dated: July 1, 2021

United States District Judge
Franklin U. Valderrama

---

1584561, at *4 (granting summary judgment to the defendant-employer where there was no evidence to support a breach, and not reaching the proximate cause element).